**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CKNAPP SALES, INC. d/b/a VIVO, ) | |
| Plaintiff, ) | Case No. 1:23-cv-16181 |
| ) | |
| v. ) | |
| ) | |
| MANEHU PRODUCT ALLIANCE, LLC ) | |
| d/b/a MANTELMOUNT, ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGMENT**

Plaintiff CKnapp Sales, Inc. d/b/a VIVO ("Plaintiff" or "VIVO"), by and through its

undersigned attorneys, for its Complaint for Declaratory Judgment of Non-Infringement against

Defendant Manehu Product Alliance, LLC d/b/a Mantelmount ("Defendant" or "Mantlemount"),

alleges as follows:

**NATURE OF THE ACTION**

1.      This is a case stemming from the Defendant's efforts to leverage Amazon.com,

Inc.'s ("Amazon") "Amazon Patent Evaluation Express" (APEX) procedure to wrongfully stop

VIVO's U.S. sales with respect to certain products (as identified herein) and to thereby gain an

unfair advantage.

2.      VIVO comes to this Court seeking relief under the Declaratory Judgment Act, 28

U.S.C. § 2201 *et seq.*, and the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, so that the

parties can resolve this dispute in a venue that provides VIVO appropriate due process, that will

interpret the patent claims according to their legal scope, that allows full discovery on all relevant

issues, and that will exercise the judicial power of the United States under Article III to rule on

Defendant's wrongful infringement claims that, to date, have been presented only to Amazon.

1

## PARTIES

3.      Plaintiff CKnapp Sales, Inc. d/b/a VIVO is a corporation registered and existing under the laws of the State of Illinois with its principal place of business at 195 East Martin Dr., Goodfield, IL 61742.

4.      On information and belief, Defendant Manehu Product Alliance, LLC d/b/a Mantelmount is a corporation registered and existing under the laws of the State of California with its principal place of business at 22333 Faraday Ave., Suite J, Carlsbad, CA 92008.

## NATURE OF ACTION

5.      This is an action for declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, of non-infringement of U.S. Patent No. 11,781,703 (the "'703 patent").

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this Court has exclusive jurisdiction over declaratory judgment claims arising under the patent laws of the United States.

7.      This Court has personal jurisdiction over Defendant Mantelmount because Mantelmount has established minimum contacts with this forum such that the exercise of jurisdiction over Mantelmount would not offend traditional notions of fair play and substantial justice.

8.      Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391. Pursuant to 28 U.S.C. § 1391(b)(2), a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in Illinois. For example, the accused products can and have been shipped into this district. Defendant

2

is deemed to reside in this district pursuant to 28 U.S.C. § 1391(c)(2), because Defendant is subject to personal jurisdiction in this district with respect to this action.

9.     There is an actual and justiciable controversy between the parties as to the infringement of the '703 patent. VIVO is a seller of ergonomic products including television wall mounts. VIVO sells a substantial amount of its products through the Amazon.com, Inc. ("Amazon") marketplace. Defendant has alleged that VIVO's television wall mount products infringe at least claim 33 of the '703 patent. As a result of Defendant's allegations of infringement, VIVO's products are at imminent risk of being delisted from Amazon, causing significant harm to VIVO's business and reputation.

## FACTUAL BACKGROUND

10.     VIVO sells ergonomic products, including television wall mounts. VIVO has been selling its products for over a decade, including on amazon.com.

11.     Upon information and belief, VIVO has been in the industry longer than Defendant and has been selling its products since long before Defendant's '703 patent issued.

12.     Nevertheless, Defendant allegedly owns the '703 patent, titled "Adjustable Mounting Systems for Televisions," which issued on October 10, 2023. A copy of the '703 patent is attached as Exhibit 1.

13.     On November 3rd, 2023, Amazon informed VIVO that Defendant had reported that the Accused Products infringe claim 33 of the '703 patent. *See* Exhibits 2-3.

14.     To handle removal requests like Defendant's, Amazon has instituted a "Patent Evaluation Procedure" whereby patent holders may seek to have products removed from Amazon that allegedly infringe their patents.

15.     The process is initiated, as VIVO understands it, by filing a notice of infringement with Amazon. A patent holder does not need to submit any specific evidence to support its complaint, nor does the submitting party need to have a court order. The patent holder must simply affirm that it has a good-faith belief in its infringement allegations.

16.     After Defendant filed its allegation of infringement with Amazon, Amazon informed VIVO that VIVO had several options to address Defendant's report in order to avoid Amazon taking adverse action against VIVO (such as delisting VIVO's products). For example, VIVO could participate in the "Amazon Patent Evaluation Express Procedure" ("APEX"). *See* Exhibit 4. Alternatively, VIVO could file a lawsuit against Defendant for declaratory judgment of non-infringement of the '703 patent.

17.     Defendant alleged to Amazon that at least two of VIVO's Steel Electric TV Wall Mount products infringe the '703 patent. The VIVO products subject to Defendant's allegations include model number MOUNT-E-MM070, associated with Amazon Standard Identification Number ("ASIN") B08B1XD86V (the "MOUNT-E-MM070 Product"); and model number MOUNT-E-MM070W, associated with ASIN B0B7SFKGJ2 (the "MOUNT-E-MM070W Product") (collectively, the "Accused Products").

18.     The MOUNT-E-MM070 Product is listed on the Amazon.com website at: https://www.amazon.com/dp/B08B1XD86V/ref=twister_B0B8JZSKJL?_encoding=UTF8&th=1 (last visited Nov. 16, 20223) (the "Amazon B08B1XD86V webpage"). *See* Exhibit 5. An example image from the Amazon B08B1XD86V webpage showing a perspective view of the MOUNT-E-MM070 Product is reproduced below.



19.     The MOUNT-E-MM070W Product is listed on the Amazon.com website at:

https://www.amazon.com/VIVO-Electric-Fireplace-Adjustable-

Motorized/dp/B0B7SFKGJ2?th=1 (last visited Nov. 16, 20223) (the "Amazon B0B7SFKGJ2

webpage"). *See* Exhibit 6. An example image from the Amazon B0B7SFKGJ2 webpage showing

a perspective view of the MOUNT-E-MM070W Product is reproduced below.



Roll over image to zoom in

20.     A significant portion of VIVO's U.S. sales of the Accused Products is made via the Amazon marketplace, and thus VIVO will suffer immediate and significant financial losses if the Accused Products are delisted and unable to be sold on that platform. Such a takedown would effectively be a permanent injunction against the majority of VIVO's sales, but one that Defendant would be unlikely to satisfy the requirements for and obtain from a U.S. court.

21.     On information and belief, Defendant appears to be using the Amazon process as an anti-competitive tool that skirts the protections of the U.S. judicial system. Notably, Defendant has not asserted the '703 patent in any litigation against VIVO.

22.     VIVO has been told by Amazon that a judicial declaration of non-infringement would avoid Amazon taking adverse action against VIVO with respect to the Accused Products, further emphasizing the need for judicial intervention. *See* Exhibit 2.

### VIVO Does Not Infringe the '703 Patent

23.     The '703 patent claims priority to, among other applications, a continuation-in-part patent application (U.S. Appl. No. 15/489,596), which newly added Figures 41-73A for the first

time. During prosecution of the '703 patent, Defendant filed a preliminary amendment canceling original claims 1-26. *See* Exhibit 7, Preliminary Amendment (Feb. 13, 2023). Defendant then added claims 27-62. Claim 59 added during the preliminary amendment corresponds to claim 33 as issued with the '703 patent, and which is at issue in this case. *See id.*

24. On February 17, 2023, the Examiner, on behalf of the United States Patent and Trademark Office ("USPTO"), issued a restriction requirement contending that the application contains the following distinct species as related to the Figures of the '703 patent:

> Species 1 shown in figures 1-17, Species 2 shown in figures 18-26, Species 3 shown in figure 27, Species 4 shown in figure 28, Species 5 shown in figures 29-40, **Species 6 shown in figures 41-55**, Species 7 shown in figures 56-59, Species 8 shown in figures 60-62A, Species 9 shown in figure 63, Species 10 shown in figures 64-68B, Species 11 shown in figures 69 and 70, Species 12 shown in figure 71, and Species 13 shown in figures 72-73A. The species are independent or distinct because the species discloses independent or distinct television mounting systems. In addition, these species are not obvious variants of each other based on the current record.

*Id.*, Requirement Restriction (Feb. 17, 2023) (emphasis added).

25. The Examiner further noted that "the species are independent or distinct because the species disclose[] independent or distinct television mounting systems." *Id.* In addition, the Examiner noted that "these species are not obvious variants of each other based on the current record." *Id.* The Examiner also noted that:

> There is a search and/or examination burden for the patentably distinct species as set forth above because at least the following reason(s) apply: the species or groupings of patentably indistinct species require a different field of search (e.g., searching different classes/subclasses or electronic resources, or employing different search strategies or search queries).

*Id.* The Examiner invited the applicant to respond to the election with or without traverse. *Id.*

26. On April 24, 2023, Defendant responded expressly electing Species 6 (shown in Figures 41-55) as identified by the Examiner. *Id.*, Response to Requirement Restriction (Apr. 24,

2023). Defendant made the election "without traverse." Still further, Defendant told the Examiner that claim 33 (among other claims) is "readable on Species 6." *Id.*

27.     The '703 patent issued on October 10, 2023. The '703 patent has 36 claims, of which claims 1, 8, 18, 26 and 33 are independent.

28.     Through Amazon's APEX procedure, as identified *supra*, Defendant has alleged that the Accused Products infringe at least independent claim 33 of the '703 patent. Independent claim 33 of the '703 patent is reproduced below.

> 33. A television mounting system comprising:
>
> a support bracket configured to couple to a wall;
>
> a display bracket configured to hold a television;
>
> an arm assembly pivotally coupled to the support bracket and movable between a raised configuration to position the display bracket at a raised position and a lowered configuration to position the display bracket at a lowered position, wherein the arm assembly includes an upper arm and a lower arm; and
>
> **[1] a motorized actuator assembly having a support bracket end rotatably coupled to** the support bracket and **a display bracket end** rotatably coupled to the arm assembly, wherein at least a portion of the motorized actuator assembly moves toward and past a portion of the lower arm **[2] when the arm assembly moves toward the raised configuration**.

29.     VIVO's Accused Products do not infringe any valid, enforceable claim of the '703 patent, including claim 33.  By way of example, the Accused Products do not have one or more of the following claim limitations: (1) "a motorized actuator assembly … rotatably coupled to … a display bracket end"; and (2) "… when the arm assembly moves toward the raised configuration."

30.     The Accused Products do not meet the claim limitation "[1] a motorized actuator assembly … rotatably coupled to … a display bracket end". Nowhere does the written description use the term "motorized actuator assembly." However, the written description for Figure 42 (a figure of Species 6 which the Defendant expressly elected without traverse) discloses an "an

actuator assembly 1200" that can "include a linear actuator 1218" and a "motor 1244." *See* Exhibit

1 at 17:55-56 (citing FIG. 41). This is shown below in Figures 41 and 42 of the '703 patent.



31. Moreover, nowhere does the written description use the term "arm assembly." However, the written description for Figures 41 and 42 (a figure of Species 6 which the Defendant expressly elected without traverse) discloses "a linkage assembly 1130" that can include "a main member or upper link 1176 ("upper link 1176") and a lower link 1412." *See* Exhibit 1 at 17:42-43 (citing FIG. 41). *See id., supra* (Figures 41 and 42). The written description does not use the term "display bracket end" for the Species 6 figures. Instead, the written description for Figures 41 and 42 discloses a display bracket 1142. For example, the written description describes "[t]he linkage assembly 1130 is rotatably coupled to the support and display brackets 1140, 1142[, respectively]." *See* Exhibit 1 at 17:27-29 (emphasis added). *See id., supra* (Figures 41 and 42). Figures 41 and 42 illustrate that the "motorized actuator assembly" (as recited for claim 33) is connected to the "display bracket end" (*e.g.*, display bracket 1142) at upper link 1176 by pivot point 1177. The written description confirms this, *e.g.*: "The display bracket 1142 can be rotatably coupled to the upper link 1176 by pivot 1177 (FIG. 41)." *See* Exhibit 1 at 17:49-51 (emphasis added). *See id., supra* (Figures 41 and 42). This is further illustrated for Figures 41 and 42 of the '703 patent. *See* Exhibit 1 at 17:49-51 ("The display bracket 1142 can be rotatably coupled to the upper link 1176 by pivot 1177 (FIG. 41).").

32. By contrast, the Accused Products do not include such connection or otherwise coupling.

33. Further, the Accused Products do not meet the claim limitation "[2] … when the arm assembly moves toward the raised configuration." As mentioned *supra,* nowhere does the written description describe the term "arm assembly." However, the written description for Figures 41 and 42 (a figure of Species 6 which the Defendant expressly elected without traverse) discloses "a linkage assembly 1130" that can include "a main member or upper link 1176 and a lower link

1412." *See* Exhibit 1 at 17:42-43 (citing FIG. 41). *See id., supra* (Figures 41 and 42). Still further,

the written description for the embodiment of figures of Species 6 of the '703 patent describe a

pivot 1292 that travels along a slot 1410. This is shown, for example, in Figures 43 to 45 of the

'703 patent, as reproduced below:



34.     As explained in the written description of the '703 patent, "FIG. 44 shows the wall

mount 1100 after it has been moved away from an over-center position. The lower pivot 1292 can

move rearwardly (indicated by arrow 1293) to maintain an appropriate distance between pivot

points. FIG. 45 shows the pivot 1292 after it has been moved rearwardly along the slot 1410." *See*

Exhibit 1 at 18:41-45. As shown by Figures 43-45 (reproduced *supra*), the linkage assembly 1130,

including lower link 1412, moves when the linkage assembly 1130 is raised and lowered. This

movement allows "at least a portion of the motorized actuator assembly" to move "toward and

past a portion of the lower arm **when the arm assembly moves toward the raised**

**configuration**," as recited in part for claim 33. Exhibit 1, claim 33 (emphasis added).

11

35.    By contrast, the Accused Products do not have a lower pivot 1292 that can move rearwardly to maintain an appropriate distance between pivot points, as described by the '703 patent.

36.    As a result, the Accused Products do not infringe any claim of the '703 patent, including claim 33.

37.    In view of the above, an actual and justiciable controversy exists between VIVO and Defendant regarding the '703 patent.

**FIRST CLAIM FOR RELIEF**

**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '703 PATENT**

38.    VIVO realleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

39.    A present, genuine, and justiciable controversy exists between VIVO and Defendant regarding, *inter alia*, whether the manufacture, use, offer for sale, sale, importation and/or marketing of the Accused Products would infringe any valid or enforceable claim of the '703 patent, either directly or indirectly, that is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

40.    The manufacture, use, offer for sale, sale, importation, and/or marketing of the Accused Products would not infringe any valid or enforceable claim of the '703 patent, either directly or indirectly.

41.    VIVO is entitled to a declaration that is has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, one or more valid or enforceable claims of the '703 patent.

**PRAYER FOR RELIEF**

WHEREFORE, VIVO respectfully prays for judgment in its favor and against Defendant:

(a) Declaring that the manufacture, use, sale, offer for sale, importation, and/or marketing of VIVO's Accused Products has not infringed and does not infringe, either directly or indirectly, any claim of the '703 patent, either literally or under the doctrine of equivalents;

(b) That the Court enter an order requiring Defendant to take all efforts necessary to remedy any adverse action Amazon may have improperly taken against VIVO due to Defendant's claims of infringement, including withdrawing Defendant's report to Amazon and notifying Amazon of same; and

(c) That the Court award such other and further relief as the Court deems just and equitable in the circumstances.

Dated: November 21, 2023                    Respectfully submitted,


By: /s/ Ryan N. Phelan
    Benjamin T. Horton
    Ryan N. Phelan
    MARSHALL, GERSTEIN & BORUN LLP
    233 S. Wacker Drive
    6300 Willis Tower
    Chicago, Illinois 60606
    (312) 474-6300
    bhorton@marshallip.com
    rphelan@marshallip.com

    *Attorneys for Plaintiff,*
    *CKNAPP SALES, INC. d/b/a VIVO*